

IN THE
TENTH COURT OF APPEALS

———————————

No. 10-18-00221-CR

DARYL JOE,

Appellant

 v.

THE STATE OF TEXAS,

Appellee

———————————

From the 13th District Court
Navarro County, Texas
Trial Court No. D37693-CR

DISSENTING OPINION

Riddle me this: Where was the man when he jumped off the bridge? If you respond, "he was on the bridge," I respond, "no, that is where he was before he jumped." If you respond, "he was in the air," I respond "no, that is where he was after he jumped." As applicable to the facts of this case, the riddle is even more complex. What is the point at which Joe possessed the trailer and thus its cargo? This is a broader question than the focus on simply being hooked up to the trailer. But it is easier to understand and analyze it in the context, as the Court has, as to whether Joe was hooked up to the trailer.

At what point was Joe "hooked up" to the trailer? There is a multi-step process to getting hooked-up to the trailer. The process involves the following steps: 1) fifth wheel

positioned properly and the locking pin closed; 2) connection of air lines as necessary to release the brakes; 3) connection of the electrical plug to have the required trailer lights; and 4) some would also argue, lifting the legs/jack/levelers. I generally agree that before being hooked-up, Joe could not have been in possession of the goods.

It is undisputed that Joe started the process of taking possession of the trailer and thus its cargo. When he properly positioned the truck under the trailer, backed the truck into place, and the locking pin on the truck automatically closed, he had completed the first step described above. But did he yet have possession of the Cargo?

He did not. There is little doubt that he intended to but no doubt that he did not.

This is a classic case of attempting to steal the cargo. But failing to ever take possession of the cargo, an attempt, is the only thing of which Joe is guilty. I would hold that the evidence is insufficient for a rational jury to have held that Joe got to the stage of possessing the cargo. He attempted but failed. It is still a crime, just not the one for which he has been found guilty.

Joe, the State, and the Court also spend a fair amount of time on another element of the offense. To be a violation of this specific statute, the goods must be moving in commerce. To be moving in commerce the goods must have left the point of origin. The reason this is even an issue is because the goods, mattresses, were manufactured in a building located within a perimeter fence on the same property as where the trailer containing the goods were parked. So, the legal question is whether the mattresses had left the point of origin. The Court focuses on the ownership of the goods as determined by the Business and Commerce Code and the completion of a bill of lading. The proper analysis should not be connected to ownership or the completion of a bill of lading.

Rather, as the statute requires, the focus is on the physical location of the goods. If the goods are still at the point of origin, they are not yet goods moving in commerce.

The trailer had been backed up to the warehouse/manufacturing plant. The mattresses had been loaded on the trailer. There is an unanswered question of whether the goods were at the point of origin while they were sitting in the trailer while the trailer was still at the loading dock. But there can be no question that once the doors on the trailer were closed and the trailer was moved from the loading dock to the shipping yard, even if the shipping yard is within the perimeter fence that also surrounds the manufacturing/warehouse facility, the goods had left the point of origin and were moving in commerce within the definition in the statute. Even if the terms of the sale were that Corsicana Bedding remained the owner until some other point in the physical movement of the mattresses and the mattresses were not merely being stored in the trailer, the mattresses had left their point of origin which was the loading dock of Corsicana Bedding's manufacturing/warehouse facility.

Even though the mattresses were goods that had left the point of origin, they were never possessed by Joe. Because Joe never possessed the mattresses his issue should be sustained. Because the Court affirms his conviction, I respectfully dissent.


                              TOM GRAY
                              Chief Justice

Dissenting opinion delivered and filed March 3, 2021
Publish

